IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH EATON,            )<br>                              )<br>     Plaintiff,            )<br>                              )<br>v.                            )<br>                              )<br>AD ASTRA RECOVERY )<br>SERVICES, INC.           )<br>                              )<br>     Defendant.           ) | Case No.: 4:14-cv-01819-JCH |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING COMPLETION OF ARBITRATION OF DEFENDANT AD ASTRA RECOVERY SERVICES, INC.**

**I.   INTRODUCTION**

By this Motion to Compel Arbitration and Stay Action Pending Completion of Arbitration (the "Motion"), Defendant Ad Astra Recovery Services, Inc. ("Ad Astra") seeks to compel arbitration of the claims asserted by Plaintiff Sarah Eaton ("Plaintiff"), pursuant to the binding arbitration provision (the "Arbitration Provision") contained in the Payday Loan Agreement & Disclosure Statement (the "Agreement") to which Plaintiff agreed when Plaintiff applied for a $125.00 loan from SCIL, Inc., d/b/a SpeedyCash.com ("SpeedyCash"). Plaintiff failed to pay the loan as agreed and SpeedyCash placed Plaintiff's account ("Account") with Ad Astra for collection.

Ad Astra has the right to require arbitration of disputes relating to Plaintiff's Account pursuant to the Arbitration Provision. Alternatively, through the doctrine of

equitable estoppel, Ad Astra may compel Plaintiff to arbitrate Plaintiff's claims against Ad Astra.

The Arbitration Provision, which is a subpart of the Agreement, is valid and enforceable under applicable law.  The provision is valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*.  The FAA is applicable because section 8 of the Arbitration Provision states that "[t]his Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA…"  The Arbitration Provision is also valid and enforceable under Kansas law. Kansas law may applicable because section 8 of the Arbitration Provision states that Kansas law "shall be applicable to the extent that any state law is relevant in determining the enforceability of this Arbitration Provision under Section 2 of the FAA."  In addition, the Arbitration Provision is valid and enforceable under Missouri law.

Federal district courts, including courts in this district, have upheld arbitration provisions nearly identical to the one at issue here, including arbitration provisions in agreements between SpeedyCash and its customers.  *See Perry v. Ad Astra Recovery Services, Inc.*, No. 4:14-cv-003, 2014 WL 2765465 (E.D. Mo. June 18, 2014); *Mantle v. Ad Astra Recovery Services, Inc.*, No. 4:13-cv-639, 2013 WL 3480311 (E.D. Mo. July 10, 2013); *Mendoza v. Ad Astra Recovery Services, Inc.*, No. 2:13–cv–06922, 2014 WL 47777 (C.D. Cal. Jan. 6, 2014); *Wallis v. Ad Astra Recovery Services, Inc.*, No. 2:10-cv-00647, 2011 WL 745961 (E.D. Wis. Feb. 24, 2011); *Lougee v. Ad Astra Recovery Services, Inc.*, No. 09-cv-02423, 2010 WL 277178 (D. Col. May 24, 2010).

2605990v3

In the *Mantle* and *Perry* matters, courts in this district analyzed the arbitration provision of a Payday Loan Agreement & Disclosure Statement between the plaintiff and SpeedyCash – an agreement nearly identical in form and substance to that is at issue here. There, as here, the plaintiff brought FDCPA claims against Ad Astra in state court. There, as here, Ad Astra removed the matter to federal court and moved to compel arbitration of the dispute, based on the arbitration provision contained in the agreement. The *Mantle* court granted Ad Astra's motion, concluding that "the plaintiff executed a valid agreement to arbitrate and [her] claims under the FDCPA fall within the scope of the agreement." *Mantle*, 2013 WL 2480311 at *5.  The *Perry* court agreed and held that the Payday Loan Agreement & Disclosure Statement constituted "an enforceable agreement to arbitrate the plaintiff's FDCPA claims." *Perry*, 2014 WL 2765465 at *3-4.

Here, as in *Mantle* and *Perry*, the Arbitration Provision covers Plaintiff's claims against Ad Astra and permits Ad Astra and SpeedyCash to elect to require arbitration of those claims.  The Arbitration Provision must be enforced according to its terms pursuant to the FAA.  Accordingly, the Court should grant this Motion, order Plaintiff to submit Plaintiff's claims to binding arbitration and stay this action pending completion of the arbitration.

## II.  STATEMENT OF FACTS

### A.  The Parties

Plaintiff resides in the State of Missouri.  (Compl. ¶ 3).  Plaintiff applied for and obtained the Account in question from SpeedyCash on December 6, 2009.  (Affidavit of Thomas L. Steele submitted in Support of Defendant's Motion to Compel Arbitration

3

2605990v3

("SpeedyCash Aff.") ¶ 6; Exhibit A). At all times relevant to this litigation, SpeedyCash was located in Wichita, Kansas, as indicated on the top of the first page of the Agreement. (SpeedyCash Aff. ¶¶ 4 and 6; Ex. A). Defendant Ad Astra is incorporated in the state of Nevada. (Affidavit of David Newman ("Newman Aff.") ¶ 4). SpeedyCash placed Plaintiff's Account with Ad Astra for collection on March 18, 2010. (SpeedyCash Aff. ¶ 7; Newman Aff. ¶ 8).

### B.     Allegations of the Complaint

In Plaintiff's Complaint, Plaintiff asserts claims for declaratory relief, release of her debt, statutory damages, actual damages and reasonable attorney's fees and costs. (Compl. p. 7). Plaintiff claims that Ad Astra allegedly violated 15 U.S.C. §§ 1692d-g by by allegedly engaging in false, deceptive and misleading means in an attempt to collect a debt; using false representations and deceptive representations to collect a debt; and overshadowing Plaintiff's dispute, validation and verification rights. (Compl. ¶25.)

Ad Astra denies any wrongdoing and asserts that Plaintiff expressly agreed that Plaintiff, SpeedyCash, or Ad Astra may elect to require arbitration of the claims that Plaintiff seeks to assert in the suit at bar. (Def. Answ.) By this Motion, SpeedyCash and Ad Astra hereby elect to require arbitration of Plaintiff's claims. (SpeedyCash Aff. ¶ 8; Newman Aff. ¶ 11).

### C.     The Binding Arbitration Provision

On December 6, 2009, Plaintiff and SpeedyCash entered into the Agreement for a deferred presentment loan issued by SpeedyCash. (SpeedyCash Aff. ¶ 6; Ex. A). Above Plaintiff's signature, the Agreement states in bold, the following:

**BY SIGNING THIS AGREEMENT OR APPLYING FOR A LOAN:**
- **YOU WILL NOT BE ENTITLED TO HAVE A TRIAL BY JURY TO RESOLVE ANY CLAIM AGAINST US.**
- **YOU WILL NOT BE ENTITLED TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT OR ASSOCIATE CIRCUIT COURT, RESOLVE ANY CLAIM AGAINST US.**
- **YOU WILL NOT BE ABLE TO BRING, JOIN OR PARTICIPATE IN ANY CLASS ACTION LAWSUIT AGAINST US.**

(emphasis in original) (SpeedyCash Aff. Ex. A, p. 6).

The Arbitration Provision is a subpart of the Agreement that states in part that "[u]nless prohibited by applicable law and unless you reject the Arbitration Provision in accordance with Section 1 below, you and we agree that either party may elect to require arbitration of any Claim under the following terms and conditions:." (SpeedyCash Aff. Ex. A, p. 3).

The Agreement further provides the following:

The term "Claim" means any claim, dispute or controversy between you and us (including "related parties" identified below) that arises from or relates in any way to . . . our collection of any amounts you owe . . . . "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature . . .  It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief.

This Arbitration Provision will apply to all Claims . . .  Our "related parties" are any parent company and affiliated entities (including **Ad Astra Recovery Services, Inc.)**; our and their employees, directors, officers, shareholders, governors, managers and members . . .

(emphasis added) (SpeedyCash Aff. Ex. A, pp. 3-4).

5

2605990v3

In addition, section 9 of the Arbitration Provision provides that "[t]his Arbitration Provision shall survive . . . our sale or transfer of any Services Agreement or our rights under any Services Agreement……." (SpeedyCash Aff. Ex. A, p. 5).

Section 3 of the Arbitration Provision governs the commencement of arbitration. It states in part the following:

> To start an arbitration, you or we must give written notice of an election to arbitrate. This notice may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit.

(SpeedyCash Aff. Ex. A, p. 4).

### III. ARGUMENT

**SpeedyCash and Ad Astra Have the Right to Require the Arbitration of Claims Against Ad Astra Arising From the Collection of Any Amounts Owed by Plaintiff**

The Arbitration Provision provides that Plaintiff, SpeedyCash, or Ad Astra may elect to require arbitration of any "Claim." (SpeedyCash Aff. Ex. A, pp. 3-4). The term "Claim," as defined in the Arbitration Provision, includes any claim, dispute or controversy between Plaintiff and any "related parties" that arose from the collection of any amounts Plaintiff owed. (*Id.*) The Arbitration Provision explicitly includes Ad Astra within the term "related parties." (*Id.*) This language therefore provides Plaintiff, SpeedyCash, and Ad Astra the right to choose to require arbitration of any "Claim" between Plaintiff and Ad Astra that arises from the attempted collection of amounts owed by Plaintiff. As noted above, the *Mantle* and *Perry* courts, in this very district, compelled arbitration under nearly identical agreements to the Agreement in this matter. Both Ad Astra and SpeedyCash – via this Motion – hereby give notice to Plaintiff of their decision

6

to require arbitration of the claims asserted by Plaintiff in Plaintiff's Complaint. (SpeedyCash Aff. ¶ 8; Newman Aff. ¶ 11).

> **B. Alternatively, Ad Astra May Compel Arbitration of Plaintiff's Claims Arising From the Agreement Between Plaintiff and SpeedyCash Pursuant to the Theory of Equitable Estoppel**

Although Ad Astra is not a signatory to the Agreement, it is specifically referenced as a "related party" bound thereby. (SpeedyCash Aff. Ex. A, pp. 3-4). Again, although it did not explicitly address the fact that Ad Astra is a non-signatory, the *Mantle* and *Perry* courts found that Ad Astra was entitled to enforce the arbitration provision. *Mantle*, 2013 WL 2480311, *4 and *Perry*, 2014 WL 2765465 at *3-4. Indeed, a nonsignatory may enforce an arbitration clause against a signatory to the agreement in different circumstances. *PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010). One circumstance is where the nonsignatory seeking to compel arbitration has a close relationship with a signatory, the non-signatory is disclosed and the non-signatory is a third party beneficiary to the agreement between the signatories. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005); *Nesslage v. York Secs., Inc.*, 823 F.2d 231, 233 (8th Cir. 1987)). Another circumstance is "when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *CD Partners, LLC*, 424 F.3d at 798 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993)). "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate."

7

*Id.* (internal quotations omitted).  Yet another circumstance is when a nonsignatory seeks to arbitrate with a nonsignatory "at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (internal citation omitted); *see also PRM Energy Systems, Inc.*, 592 F.3d at 834.

In this matter, Ad Astra may enforce the arbitration agreement against Plaintiff in all three circumstances.  First, as the *Mantle* court noted, the Agreement clearly identifies Ad Astra as a "related party" to Speedy Cash and the arbitration language is meant to benefit Ad Astra as a third party beneficiary by its specific inclusion. *See Mantle*, 2013 WL 2480311 at *4.

Second, Plaintiff must rely on the terms of the Agreement to assert Plaintiff's FDCPA claims against Ad Astra.  In order to assert claims under Sections 1692e, 1692f and 1692g under the FDCPA (which Plaintiff is asserting in this matter), a plaintiff must establish that a debt collector was attempting to collect a "debt" as that term is defined by the FDCPA.  *See* 15 U.S.C. §§ 1692e and 1692f.  A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, whether or not such obligation has been reduced to a judgment." 15 U.S.C. § 1692a(5).  Thus, Plaintiff must rely on the

8

terms of the Agreement to establish that a transaction occurred in order to assert Plaintiff's FDCPA claims against Ad Astra.

Third, Plaintiff cannot avoid arbitrating Plaintiff's claims against Ad Astra. Plaintiff reaped the benefits of the Agreement when Plaintiff signed the Agreement and incurred a financial obligation to SpeedyCash.  Having enjoyed the benefits of the Agreement, Plaintiff now seeks to avoid the burdens it imposes, and to which Plaintiff earlier agreed – namely, to have Plaintiff's claims resolved in binding arbitration. Plaintiff is a signatory to the Agreement containing the Arbitration Provision.  The claims that Plaintiff asserts against Ad Astra arise from Ad Astra's attempts to collect the debt that Plaintiff incurred through the Agreement with SpeedyCash.  (Compl. ¶¶ 6-35).  Plaintiff's claims are "intimately founded in and intertwined with the underlying contract obligations" of the Agreement.  Ad Astra, as an entity involved in a dispute directly stemming from Plaintiff's Agreement with SpeedyCash, may therefore compel Plaintiff to resolve Plaintiff's claims in arbitration pursuant to the Arbitration Provision contained in the Agreement.

### C.     The Arbitration Provision is Valid and Enforceable

Section 8 of the Arbitration Provision provides that the Arbitration Provision is a transaction involving interstate commerce and shall be governed by the FAA. (SpeedyCash Aff. Ex. A, p. 5).  The FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This section creates "a body of federal substantive law of arbitrability,

9

applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).

Whether an arbitration agreement is enforceable is a question of law for the Court. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. *See Byrd,* 470 U.S. at 218-21; *Moses H. Cone,* 460 U.S. at 24. There is a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* 563 U.S. ___, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). Thus, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone,* 460 U.S. at 24. Courts must "rigorously enforce agreements to arbitrate." *Byrd,* 470 U.S. at 221.

The United States Supreme Court, as well as other federal courts following its directives, routinely enforces arbitration provisions of standard form contracts. The Arbitration Provision in the Agreement is therefore valid under applicable law, properly permits Ad Astra to elect to require arbitration of Plaintiff's claims, and must be enforced according to its terms pursuant to the FAA. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration").

As set forth previously, the arbitration provisions substantively identical to the one at issue in this case, and including SpeedyCash as a signatory, have been enforced by federal district courts in this district and others. *See Perry v. Ad Astra Recovery Services, Inc.*, 2014 WL 2765465 (E.D. Mo.); *Mantle v. Ad Astra Recovery Services, Inc.*, 2013

10

2605990v3

WL 3480311 (E.D. Mo.); *Mendoza v. Ad Astra Recovery Services, Inc.*, 2014 WL 47777 (C.D. Cal.); *Wallis v. Ad Astra Recovery Services, Inc.*, 2011 WL 745961 (E.D. Wis.); *Lougee v. Ad Astra Recovery Services, Inc.*, 2010 WL 277178 (D. Col.). This Court should likewise determine that the Arbitration Provision in the Agreement is valid under applicable law, properly permits Ad Astra to elect to require arbitration of Plaintiff's claims, and must be enforced according to its terms pursuant to the FAA.

### 1. The Arbitration Provision is Valid Under Kansas Law

Section 8 of the Arbitration Provision provides that the Arbitration Provision shall be governed by the FAA, provided that the law of Kansas "shall be applicable to the extent that any state law is relevant in determining the enforceability of this Arbitration Provision under Section 2 of the FAA." (SpeedyCash Aff. Ex. A, p. 5.)

State law governs the determination of whether there exists a valid agreement to arbitrate a plaintiff's claims. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally…should apply ordinary state-law principles that govern the formation of contracts"); *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687 (1996) (holding that under the FAA, general state law rules governing the formation of contracts apply with equal force to arbitration provisions and that arbitration provisions cannot be treated differently than other contract provisions).

As mentioned, to determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. Once it is clear, however, that the parties have a contract that provides for arbitration of some issues

2605990v3

between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "To this end, a court may not deny a party's request to arbitrate an issue `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

Here, the Agreement establishing the Arbitration Provision is a valid contract under Kansas state law. To create a contract, there must be an agreement, legal consideration, mutuality of agreement, and it must not be so vague and uncertain that the terms thereof are not clearly ascertainable. *In re Gonzalez's Estate*, 348 P.2d 1033, 1040 (Kan. 1960). The Agreement meets all these requirements. SpeedyCash and Plaintiff exchanged legal consideration when SpeedyCash agreed to loan $125.00 to Plaintiff for a $31.25 finance charge. (SpeedyCash Aff. Ex. A, p. 1). In addition, both Plaintiff and a SpeedyCash representative signed the Agreement. Plaintiff's signature on the Agreement can be found beneath language in the Agreement that states the following: "By signing below, (1) you acknowledge that you have read and received a signed copy of this Agreement, including the Notice to Borrower in the box above, and (2) you agree to the above terms and to the Agreements for Resolving Disputes." (SpeedyCash Aff. Ex. A, p. 6). And finally, the terms of the Agreement are clearly ascertainable. In *Mantle*, which again involved an almost identical agreement, the court found under Kansas contract law that Ad Astra "ha[d] shown sufficient evidence of an enforceable arbitration agreement

12

that encompasses the parties' dispute." *Mantle*, 2013 WL 2480311, *4.  The Court should find similarly here.

### 2. If the Court Determines Missouri Law Applies, the Arbitration Provision is Nevertheless Valid and Enforceable Under Missouri Law.

Plaintiff may argue that because Plaintiff is a Missouri resident, Missouri, not Kansas, law should apply.  Again, this issue was disposed of in *Mantle*.  *See Mantle*, 2013 WL 2480311 at *4.  Even if the Court were to apply Missouri law, however, the Arbitration Provision would nevertheless be valid and enforceable.  Under Missouri law, for a contract to exist, there must be "an offer, acceptance, and consideration." *Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 390 (Mo. App. 2011). These elements are satisfied in this case.  As set forth above, there was clearly an offer and acceptance.  Both Plaintiff and SpeedyCash consented to the Agreement as evidenced by their signatures thereon.[1]  Further, the Agreement was supported by consideration, including Speedy Cash's agreement to the extension of loan proceeds in exchange for a finance charge.  (SpeedyCash Aff. Ex. A, p. 1).  Therefore, the Agreement, and the Arbitration Provision found therein, is also valid and enforceable under Missouri law.

### C. Plaintiff's Claims Fall Squarely Within the Scope of the Arbitration Provision

---

[1] As mentioned above, Plaintiff's signature is found beneath language that states: "[b]y signing below, you acknowledge (1) that you have read and received a copy of this Agreement, including the Notice to Borrower in the box above, and (2) you agree to the above terms and to the Agreements for Resolving Disputes."  (SpeedyCash Aff. Ex. A, p. 6).

13

2605990v3

Once it is determined that the parties have entered a binding arbitration agreement, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech, Inc. v. Comm'ns Workers of Am.,* 475 U.S. 643, 650 (1986).

The first part of the inquiry is for the Court to classify the particular arbitration clause as either broad or narrow. *Id.* If the arbitration clause is narrow, the Court must then determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. *Id.*

Applying this test to the arbitration clause at issue, the Court (as the *Mantle* court did) will find that the Arbitration Provision is broad in scope as it covers any "Claim" and it provides that the term "Claim" is to be given the broadest possible meaning and includes claims of every kind and nature. (SpeedyCash Aff. Ex. A, p. 4.) Moreover, the Arbitration Provision expressly extends to "any claim, dispute or controversy between you and us (including "related parties" identified below) that arises from or relates in any way to . . . our collection of any amounts you owe." (*Id*.) The Arbitration Provision specifically includes Ad Astra as a "related party." (*Id*.) The Arbitration Provision thus

14

2605990v3

plainly encompasses Plaintiff's claims, which are based on allegations that Ad Astra violated the FDCPA in attempting to collect the Account.

Because Plaintiff's claims fall within the scope of the Arbitration Provision, the Court should issue an order requiring Plaintiff to submit his claims against Ad Astra to arbitration.

### D. This Action Should Be Stayed Pending Completion of Arbitration

Section 3 of the FAA provides that where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The FAA also provides for court orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. Here, the Arbitration Provision permits Ad Astra to require arbitration of Plaintiff's claims against it. Accordingly, Ad Astra requests that the Court order Plaintiff to submit his claims to binding arbitration and stay this action pending completion of that arbitration.

### IV. CONCLUSION

Defendant Ad Astra respectfully requests that this Honorable Court enforce the terms of the Agreement and the Arbitration Provision contained within the Agreement, order Plaintiff to resolve Plaintiff's claims in binding arbitration, and stay this action pending completion of arbitration.

2605990v3

Dated:  December 2, 2014    By:   /s/ James R. Bedell
James R. Bedell, #0351544MN
Moss & Barnett, P.A.
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Tel:  612.877.5000
Fax: 612.877.5999
jim.bedell@lawmoss.com

Joshua C. Dickinson, #51446MO
Spencer Fane Britt & Browne LLP
12925 West Dodge Road, Suite 107
Omaha, NE 68154
Tel:  402.965.8600
Fax: 402.965.8601
jdickinson@spencerfane.com


*Attorneys for Defendant Ad Astra Recovery Services, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, the Affidavit of Thomas L. Steele and Exhibit A, and the Affidavit of David H. Newman and Exhibit A were filed electronically with the United States District Court for the Eastern District of Missouri, Eastern Division, this 2nd day of December, 2014, with notice of case activity generated and sent electronically to:

> Steven A. Donner
> Aektra Legal, LLC
> 405 Washington Avenue
> St. Louis, MO 63102
> Steve.donner@aektralegal.net
>
> Matthew P. Cook
> P.O. Box 220342
> St. Louis, MO 63122
> Cookmp21@yahoo.com
>
> *Attorneys for Plaintiff*

/s/ James R. Bedell

2605990v3