**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH EATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14CV1819(JCH) |
| | ) | |
| AD ASTRA RECOVERY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ad Astra Recovery Service Inc.'s ("Ad Astra") Motion to Compel Arbitration and Stay Action Pending Completion of Arbitration, which Ad Astra filed on December 2, 2014. (ECF No. 10). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

Plaintiff Sarah Eaton ("Eaton") initiated this action by filing a Petition in the Circuit Court of Warren County, Missouri. (Removal Notice, ECF No. 1). According to the Petition, Eaton is an individual who incurred an unspecified consumer debt. (Petition, ECF No. 4, ¶ 3). Ad Astra is a company that "engage[s] in the collection of debts from consumers using the mail and telephone in Missouri." *Id.* ¶ 5. Pursuant to its debt-collection business, Ad Astra "report[ed] a negative collection item on [Eaton's] credit reports." *Id.* ¶ 7. After discovering Ad Astra's claim on her credit report, Eaton contacted Ad Astra to inquire about it. *Id.* ¶¶ 8, 11. During the telephone conversation, Ad Astra allegedly attempted to collect the debt from Eaton, and in the process made a number of misrepresentations. *Id.* ¶¶ 12-18. Eaton therefore filed a claim against Ad Astra for violation of the Fair Debt Collection Practices Act ("FDCPA"). *Id.* ¶¶ 22-25.

The debt at the center of the dispute arose when Eaton obtained a payday loan of $125 from SCIL, Inc., d/b/a SpeedyCash.com ("SpeedyCash"). (Ad Astra Support Memo, ECF. No. 11, at 1, 4-6; Eaton Response, ECF No. 13, at 2-3; Loan Agreement, ECF No. 11-1, at 4). The Loan Agreement between Eaton and SpeedyCash contains an Arbitration Provision, which states:

> Unless prohibited by applicable law and unless you reject the Arbitration Provision in accordance with Section 1 below, you and we agree that either party may elect to require arbitration of any Claim under the following terms and conditions:
>
> . . .
>
> **2. DEFINITITION OF "CLAIM".** The term 'Claim' means any claim, dispute or controversy between you and us (including 'related parties' identified below) that arises from or relates in any way to Services you request or we provide, now, in the past or in the future; the Application (or any prior or future application); any agreement relating to Services ('Services Agreement'); any of our marketing, advertising, solicitations and conduct relating to your request for Services; our collection of any amounts you owe; our disclosure of or failure to protect any information about you; or the validity, enforceability or scope of this Arbitration Provision. 'Claim' is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief. Notwithstanding the foregoing, 'Claim' does not include any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court, or any assertion that Section 5(C), (D), and/or (E) below is invalid or unenforceable; any such actions and assertions of this kind will be resolved by a court and not an arbitrator. 'Claim' also does not include any 'self-help remedy' (that is, any steps taken to enforce rights without a determination by a court or arbitrator, for example, repossession and/or re-titling of a motor vehicle) or any individual action by you or us to prevent the other party from using any self-help remedy, so long as such self-help remedy or individual judicial action does not involve a request for monetary relief of any kind. Even if all parties have elected to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new

> Claim asserted in that lawsuit, and nothing in that litigation shall constitute a waiver of any rights under this Arbitration Provision. This Arbitration Provision will apply to all Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Provision. Our 'related parties' are any parent company and affiliated entities (including Ad Astra Recovery Services, Inc.); our and their employees, directors, officers, shareholders, governors, managers and members and any third parties who are parties in a legal proceeding involving you and us.

(Loan Agreement, ECF No. 11-1, at 6-7). The Loan Agreement also includes the following notice above the signature line:

> **BY SIGNING THIS AGREEMENT OR APPLYING FOR A LOAN:**
> - **YOU WILL NOT BE ENTITLED TO HAVE A TRIAL BY JURY TO RESOLVE ANY CLAIM AGAINST US.**
> - **YOU WILL NOT BE ENTITLED TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT OR ASSOCIATE CIRCUIT COURT, RESOLVE ANY CLAIM AGAINST US.**
> - **YOU WILL NOT BE ABLE TO BRING, JOIN OR PARTICIAPTE IN ANY CLASS ACTION LAWSUIT AGAINST US.**

(Loan Agreement, ECF No. 11-1, at 9 (emphasis in original)).

Ad Astra timely removed this matter on October 28, 2014. (Removal Notice, ECF No. 1). It now seeks to compel arbitration in accordance with the Arbitration Provision. (Ad Astra Support Memo at 15).

## DISCUSSION

Ad Astra contends "[t]he Arbitration Provision provides that [Eaton], SpeedyCash, or Ad Astra may elect to require arbitration of any 'Claim.'" (Ad Astra Support Memo at 6). The definition of Claim in the Loan Agreement, according to Ad Astra, is broad enough to encompass the type of action at issue here. *Id.* at 14-15. Thus, because the Arbitration Provision is valid and enforceable under Kansas law, the Federal Arbitration Act ("FAA") requires the Court to compel arbitration and stay this action until arbitration is completed. *Id.* at 9-15.

Eaton responds that Ad Astra's motion should be denied because the Loan Agreement containing the Arbitration Provision is unconscionable, and thus unenforceable, under Missouri law, which she suggests should apply. (Eaton Response, ECF No. 17, at 1). Eaton contends in the alternative that even if the Arbitration Provision is enforceable, the definition of Claim does not explicitly cover claims brought under the FDCPA and therefore cannot serve as a basis to compel arbitration of this matter. *Id.* at 6-7.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA mandates that courts shall "stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478)). The final clause of § 2 is significant here. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability' . . . ." *Id.* at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

*A. Unconscionability*

Eaton contends first that the Loan Agreement is unconscionable and that its Arbitration Provision therefore cannot be enforced. To determine the applicability of a defense made available under the saving clause of § 2, it is necessary to look to state substantive law. *See id.* Under Kansas law,[1] courts use the doctrine of unconscionability to protect "against one-sided,

[1] Eaton asserts that Missouri law applies without providing a reason. In federal question cases, federal courts apply federal common law to determine which law applies. *Kansas City Chiefs Football Club, Inc.*

oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain." *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 759-60 (Kan. 1976). The *Wille* court listed several factors for Kansas courts to analyze in the context of an unconscionability defense, including whether the contract is offered on a take-it-or-leave-it basis; whether one party has engaged in "exploitation of the underprivileged, unsophisticated, uneducated and the illiterate[;]" and whether there is unequal bargaining power between the parties. *Id.* at 759. Kansas courts have consistently held, however, that "unequal bargaining position alone is not enough to find a contract term unconscionable. For a contract term to be unconscionable, there must be some type of deceptive practice associated with the term." *Aves ex rel. Aves v. Shah*, 258 Kan. 506, 520 (Kan. 1995).

Eaton presents five factors in support of her contention that the Loan Agreement, and therefore the Arbitration Provision, is unconscionable. First, Eaton claims that she was under such economic duress that she had no real bargaining power. (Eaton Response at 2, 4). Second, the take-it-or-leave-it nature of the contract means there was no bargained-for exchange. *Id.* at 4. Third, SpeedyCash and Ad Astra did not make a reasonable effort to disclose the nature of their business relationship to their customers. *Id.* at 4-5. Fourth, Eaton will be forced to pay attorney fees if she loses in arbitration, whereas the FDCPA allows attorney fees only if a defendant can show the plaintiff brought the action in "'**bad faith and for the purpose of harassment.**'" *Id.* at

---

*v. Allen*, 2013 WL 1339820, at *5 (March 30, 2013) (citing *Huynh v. Chase Manhattan Bank*¸465 F.3d 992, 997 (9th Cir. 2006) and *Daimler Chrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Ci. 2006)). In the context of a choice-of-law provision, this means federal courts apply the approach set out in the Restatement (Second) of Conflict of Laws. *Id.* Under the R.2d, a choice-of-law provision in a contract applies unless (1) there is no substantial relationship between the parties and the chosen state or (2) the chosen state's law would be "contrary to a fundamental policy of a state which has a materially greater interest . . . ." Restatement (Second) of Conflict of Laws § 187 (1971). As Eaton makes no attempt to demonstrate either prong, the choice of Kansas law in the Loan Agreement must be upheld.

5 (emphasis in original) (quoting 15 U.S.C. § 1692k). Finally, the Arbitration Provision does not allow Eaton "to obtain proper discovery in this matter." *Id.* at 6.

The first factor Eaton mentions is her desperate economic situation, which she frames as a demonstration of unequal bargaining power. (Eaton Response at 2-4). As noted above, unequal bargaining power is relevant to an unconscionability analysis under Kansas law, but it is not sufficient on its own to establish unconscionability. Eaton has not suggested that SpeedyCash acted in a deceptive manner or otherwise exploited its bargaining position as Kansas courts require. Without demonstrating such an additional factor, the unequal bargaining positions of Eaton and SpeedyCash do not demonstrate unconscionability under Kansas law.

Eaton's contention that the take-or-leave-it nature of the Loan Agreement renders it unconscionable is also unavailing. Kansas courts have held that take-it-or-leave-it contracts, also called contracts of adhesion, are not *per se* unconscionable. *E.g.*, *Ed Bozarth Chevrolet, Inc. v. Black*, 96 P.3d 272, 279-80 (Kan. Ct. App. 2003). Thus, that the Loan Agreement is a contract of adhesion does not on its own demonstrate the agreement's unconscionability. Nor does the combination of this factor with any of the others Eaton cites make it so.

The last three of Eaton's factors provide no support for her unconscionability contention. It is difficult to understand how any failure to disclose the nature of SpeedyCash's business relationship with Ad Astra makes the Loan Agreement unconscionable, and Eaton provides no Kansas case law in support of this assertion. Moreover, Eaton's complaints about the procedural aspects of arbitration are based on incorrect assumptions. Ad Astra points out that the Loan Agreement requires payment for attorney fees only "'*to the extent permitted by applicable law* . . . .'" (Ad Astra Reply, ECF No. 18, at 11 (emphasis in original)). This means Ad Astra could only recover attorney fees in the context of an FDCPA claim on a showing that Eaton brought the

claim in bad faith or for harassment purposes. As to Eaton's concerns about the availability of discovery, Ad Astra cites the arbitration rules used by the two arbitration agencies mentioned in the Arbitration Provision, which "specifically allow for the exchange of information through informal discovery." *Id.* Because none of the factors Eaton cites individually or collectively support her contention that the Loan Agreement is unconscionable, Eaton cannot avoid application of the Arbitration Provision on that basis.[2]

*B. Scope of the Arbitration Provision*

Eaton next contends that Ad Astra's motion should be denied because her FDCPA claim is not within the scope of the Arbitration Provision. "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration." *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005). A court should therefore find a claim is covered by an arbitration agreement "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001) (quoting *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986))). This standard is especially difficult to satisfy in the context of broadly-worded arbitration provisions, which are inherently susceptible to various interpretations.

The Arbitration Provision is broadly worded. It states that unless arbitration is prohibited by law or specifically rejected in accordance with the Loan Agreement, "either party may elect to require arbitration of any Claim . . . ." (Loan Agreement, ECF No. 11-1, at 6). It then defines a

---

[2] Even if Eaton could establish unconscionability, her only argument is that the Loan Agreement as a whole, rather than the Arbitration Provision specifically, is unconscionable. Since arbitration provisions are severable from unenforceable contracts, the determination of whether the Loan Agreement is enforceable must be made by an arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Eaton's unconscionability argument, meritorious or not, therefore cannot serve as the basis to deny this motion to compel arbitration.

Claim as "any claim, dispute or controversy between you and us (including 'related parties' identified below) that arises from or relates in any way to Services you request or we provide, now, in the past or in the future[.]" *Id.* It states further that the term "is to be given the broadest possible meaning and includes claims of every kind and nature, including but not limited to . . . claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, negligence, fraud or other intentional wrongs) and equity." *Id.*

Eaton makes two arguments for exclusion of her FDCPA claim from the scope of the Arbitration Provision: (1) that "[i]f the parties wish to arbitrate FDCPA claims, then the arbitration provision should have spelled that out[;]" and (2) "that arbitration clauses do not apply to tort claims as they are independent of the contract . . . ." (Eaton Response at 6-7). Neither contention has merit. The first is inconsistent with the principles explained above. The second is contrary to the law of this Circuit. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010) (noting that in the context of an arbitration clause "[i]t generally does not matter that claims sound in tort, rather than contract"). Moreover, it is reasonable to understand Eaton's FDCPA claim as relating to the debt she incurred under the Loan Agreement, since her claim will inevitably revolve around Ad Astra's activities in attempting to collect that debt. Eaton therefore has not demonstrated with positive assurance that the Arbitration Provision is not susceptible to an interpretation that includes her FDCPA claim.

Because the Arbitration Provision is valid and covers claims brought against Ad Astra under the FDCPA, the FAA requires that Eaton's claims be resolved in arbitration and that this matter be stayed pending completion of that arbitration.

Accordingly,

**IT IS HEREBY ORDERED** that Ad Astra's Motion to Compel Arbitration and Stay Action Pending Completion of Arbitration, (ECF No. 10), is **GRANTED**, and this matter is stayed pending resolution of the arbitration process. The parties shall jointly submit a notice updating the Court on the status of this case no later than ten (10) days following the completion of arbitration.

Dated this 20th day of January, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE